Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000049
18-NOV-2013
08:11 AM

NO. CAAP-13-0000049

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


IN THE MATTER OF

SODERHOLM SALES AND LEASING, INC.,
Petitioner-Appellant,
v.
DEPARTMENT OF BUDGET AND FISCAL SERVICES,
CITY AND COUNTY OF HONOLULU,
Respondent-Appellee,
and
OFFICE OF ADMINISTRATIVE HEARINGS,
DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS,
STATE OF HAWAI'I,
Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-3091-12 RAN)


SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding J., Fujise and Reifurth, JJ.)

Appellant-Appellant Soderholm Sales and Leasing, Incorporated (SSLI) appeals from the Circuit Court of the First Circuit's January 4, 2013 "Order Denying Solderholm Sales And Leasing, Inc.'s Appeal And Affirming The Hearings Officer's Findings Of Fact, Conclusions Of Law And Decision Filed November 30, 2012" and January 4, 2013 Judgment entered in favor of Appellees-Appellees Office of Administrative Hearings, Department of Commerce and Consumer Affairs, State of Hawai'i and Department

of Budget and Fiscal Services, City and County of Honolulu (City).[1]

SSLI contends the circuit court erred by: (1) determining Hawaii Revised Statutes (HRS) § 29-15 (2009 Repl.) prevents the City from imposing HRS Chapter 437 (the Motor Vehicle Industry Licensing Act (MVILA)) motor vehicle dealer licensing requirements in its request for bids for furnishing and delivering paratransit vehicles, RFB-DTS-547510 (RFB); and (2) declining to apply the analysis set forth in Kewalo Ocean Activities v. Ching, 124 Hawai'i 313, 317, 243 P.3d. 273, 277 (App. 2010) and consequently failing to determine that HRS Chapter 437 should have control over HRS § 29-15.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude SSLI's appeal is without merit.

The City's RFB included federal assistance from the Federal Transit Administration (FTA) and thus required bidders to comply with federal assistance requirements. Requirements pertinent to this case are specified in the federal Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFTEA-LU), Pub. L. 109-59, 119 Stat. 1144 (2005); Third Party Contracting Guidance, FTA C 4220.1F (Nov. 1, 2008) (rev. Feb. 15, 2011) (FTA Circular 4220.1F); 49 C.F.R. § 18.36(c)(2) (1995); the Master Agreement For Federal Transit Administration Agreements authorized by 49 U.S.C. chapter 53, Title 23, United States Code (Highways), the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, as amended by the SAFETEA-LU Technical Corrections Act, 2008, the Transportation Equity Act for the 21st Century, as amended, the National Capital Transportation Act of 1969, as amended, the American Recovery and Reinvestment Act of 2009, Pub. L. 111-5, February 17, 2009, or other Federal laws that FTA

---

[1] The Honorable Rhonda A. Nishimura presided.

administers, FTA MA(18) (Oct. 1, 2011) (Master Agreement); and any federal directive as defined within the Master Agreement.[2]

Under these federal authorities, the City is prohibited from limiting its RFB to "in-State dealers" and from imposing geographical preferences or location requirements. Emails from an FTA Transportation Program Specialist and forwarded by an FTA Assistant Regional Counsel of Administration Region IX in response to queries from Hawaiʻi State Department of Transportation (HDOT) employees constituted "federal directives." The FTA emails specifically addressed the application of federal assistance requirements to MVILA provisions, "[v]arious provisions of HRS [Chapter] 437, when applied to a federally-supported procurement, conflict with 49 USC 5324, 49 CFR 18.36, and the Master Agreement . . . because it imposes a local geographical preference and, in doing so, restricts full and open competition." FTA employees concluded, "[s]hould HDOT choose to apply HRS [Chapter] 437 provisions that conflict with federal law, as well as the Master Agreement, to a procurement process, then any contract awarded as a result of that process is ineligible for federal funds."

HRS Chapter 437 provides for in-State dealers and contains location requirements. HRS § 437-2(a) (Supp. 2012) requires "motor vehicle dealer[s] . . . in this State" and others "engage[d] in the business of selling or negotiating for the purchase of motor vehicles in this State" to obtain a license. (Emphases added.) HRS §§ 437-7(i), (j)(1) (Supp. 2012), and

---

[2] "Federal directive" is defined under Section 1 ("Definitions") of the Master Agreement:

> e. Federal Directive, for purposes of this Master Agreement, includes any Executive Order of the President of the United States, and any Federal document, irrespective of whether it is a published policy, administrative practice, circular, guideline, guidance, or letter signed by the head of a Federal agency or his or her designee, that provides instructions or official advice about a Federal program, including application processing procedures, program management, or other similar matters.

(Emphasis added.)

437-11 (Supp. 2012) variously require MVILA dealer licensees to provide a "minimum one-year lease or rental agreement," "sanitation facilities," maintain "licensed premises," and "a permanent building thereon suitable for the display . . . of at least three motor vehicles . . . ." Because MVILA contains in-state dealer and location requirements, the City properly determined that its RFB could not require MVILA licensing without conflicting with FTA requirements.

HRS § 29-15, entitled "Conflict between federal and state requirements," permits the City to exempt bidders from MVILA licensing requirements by providing that "[i]n the case of any contract," which is wholly or partially supported by federal funds, federal law "shall govern and . . . the officer expending the funds shall conform to such requirements as the United States, or its instrumentality, shall provide or require, any other law or laws of the State to the contrary notwithstanding." Id.

SSLI's second point of appeal is that the circuit court erred by declining to apply a three-prong analysis for "interpreting statutes that appear to relate to the same subject matter[.]" Kewalo Ocean Activities, 124 Hawai'i at 317, 243 P.3d at 277. HRS § 29-15, relating to conflicts between federal and state law, and HRS Chapter 437, relating to motor vehicle industry licensing, do not "appear to relate to the same subject matter[,]" therefore the Kewalo Ocean Activities three-pronged conflicts analysis is inapplicable to our interpretation of these statutes. 124 Hawai'i at 317, 243 P.3d at 277.

Accordingly, the circuit court did not err by determining that HRS § 29-15 authorizes the City to exclude HRS Chapter 437 motor vehicle dealer licensing requirements from federally-funded solicitation for paratransit vehicles, nor by declining to apply the analysis set forth in Kewalo Ocean Activities. 124 Hawai'i at 317, 243 P.3d at 277.

Therefore,

IT IS HEREBY ORDERED that Circuit Court of the First Circuit's January 4, 2013 "Order Denying Solderholm Sales And Leasing, Inc.'s Appeal And Affirming The Hearings Officer's

4

Findings Of Fact, Conclusions Of Law And Decision Filed November 30, 2012" and January 4, 2013 Judgment are affirmed.

DATED: Honolulu, Hawai'i, November 18, 2013.

On the briefs:

Jeffrey P. Miller
(Bushnell & Miller)
for Petitioner-Appellant.

Nicole R. Chapman
Ryan H. Ota
Amy R. Kondo
Deputies Corporation Counsel,
City and County of Honolulu
for Respondent-Appellee.

Presiding Judge

Associate Judge

Associate Judge

5